## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SUMITOMO RUBBER (THAILAND) CO., LTD. | : |
| Plaintiff, | : |
| v. | : Court No. 21-00432 |
| UNITED STATES, | : |
| Defendant. | : |

## **COMPLAINT**

Plaintiff Sumitomo Rubber (Thailand) Co., Ltd. ("Plaintiff" or "SRT"), by and through its attorneys, alleges and states as follows:

1. Plaintiff seeks judicial review of the final affirmative injury determination of the U.S. International Trade Commission ("Commission") with respect to Thailand in the investigation of passenger vehicle and light truck ("PVLT") tires from Korea, Taiwan, Thailand, and Vietnam. *See Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam*, Inv. Nos. 701-TA-647 and 731 TA-1517-1520 (final), USITC Pub. 5212 (July 2021) ("*Final Views*"). The Commission published its final determination in the *Federal Register* on July 16, 2021. *Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam*, 86 Fed. Reg. 37,764 (July 16, 2021). Following the Commission's final determination, the U.S. Department of Commerce ("Commerce") published notice of the antidumping duty order on PVLT tires from Thailand on July 19, 2021. *Passenger Vehicle and Light Truck Tires from the Republic of Korea, Taiwan, and Thailand: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for Thailand*, 86 Fed. Reg. 38,011 (July 19, 2021) ("*Orders*").

1

## JURISDICTION

2. Plaintiff brings this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i) to review a final affirmative determination made by the Commission under 19 U.S.C. § 1673d(b). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

3. Plaintiff is a producer and exporter of PVLT tires from Thailand and, thus, meets the definition of an "interested party" within 19 U.S.C. § 1677(9)(A).

4. Plaintiff participated in the underlying investigation giving rise to this action and, therefore, constitutes "a party to the proceeding in connection with which the matter arose" under 19 U.S.C. § 1516a(a)(2)(A).

5. As an interested party who participated as a party in the underlying proceeding, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THE ACTION

6. The Commission published notice of its final determination in the *Federal Register* on July 16, 2021. Commerce subsequently published notice of the antidumping duty order on PVLT tires from Thailand on July 19, 2021.

7. Plaintiff filed its Summons for this action on August 17, 2021. Plaintiff therefore commenced this action within the time period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c).

8. Plaintiff timely filed this Complaint within 30 days of the filing of the Summons in this action, as required by the time limits set forth in 19 U.S.C. § 1516a(a)(2)(A) and Court Rule 3(a)(2).

## PROCEDURAL HISTORY

9. On May 13, 2020, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") filed a petition with the Commission and Commerce alleging that imports of PVLT tires from Thailand were sold in the United States at less than fair value and that those imports injure the domestic PVLT tire industry.

10. On May 19, 2020, the Commission instituted antidumping and countervailing duty investigations to determine whether there was a reasonable indication that an industry in the United States is materially injured or threatened with material injury, or that the establishment of an industry in the United States is materially retarded, by reason of imports of PVLT tires from Korea, Taiwan, Thailand, and Vietnam that are alleged to be sold in the United States at less than fair value and to be subsidized by the Government of Vietnam. *Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 85 Fed. Reg. 29, 972 (May 19, 2020).

11. On July 22, 2020, the Commission published its preliminary determination, which found that there is a reasonable indication that an industry in the United States is materially injured by reason of imports of PVLT tires from Korea, Taiwan, Thailand, and Vietnam that are alleged to be sold in the United States at less than fair value and to be subsidized by the

Government of Vietnam. *Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam*, 85 Fed. Reg. 44,322 (July 22, 2020).

12. The Commission published the schedule of the final phase of its investigation on January 29, 2021. *Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam: Scheduling of Final Phase of Countervailing Duty and Antidumping Duty Investigations*, 86 Fed. Reg. 7561 (Jan. 29, 2021). Interested parties, including SRT, submitted pre-hearing briefs on May 18, 2021. The Commission held a public hearing in which interested parties presented their arguments on May 25, 2021. Interested parties, including SRT, filed post-hearing briefs on June 2, 2021.

13. On June 23, 2021, the Commission held a vote to determine whether PVLT tires from Korea, Taiwan, Thailand, and Vietnam injured the domestic PVLT tire industry. USITC News Release 21-081, *Passenger Vehicle and Light Truck Tires from Korea, Taiwan, and Thailand, and Subsidized Passenger Vehicle and Light Truck Tires from Vietnam, Injure U.S. Industry* (June 23, 2021). Four Commissioners voted in the affirmative with respect to the antidumping duty investigations involving Korea, Taiwan, and Thailand and the countervailing duty investigation concerning Vietnam. *Id.* Commissioner David S. Johanson voted in the negative, finding that imports of PVLT tires from Korea, Taiwan, Thailand, and Vietnam neither materially injured the domestic industry nor threatened the domestic industry with material injury. *Id.*

14. The Commission published its public views, which included Commissioner Johanson's dissent, on July 19, 2021. *Final Views*, USITC Pub. 5212. The Commission concluded that the domestic PVLT tire industry was materially injured by reason of imports of PVLT tires from Korea, Taiwan, and Thailand found by Commerce to be sold in the United

4

States at less than fair value and imports of PVLT tires from Vietnam that Commerce found to be unfairly subsidized by the Government of Vietnam. *Id.* at 47.

15. When determining whether the domestic PVLT tire industry was materially injured by reason of subject imports, the Commission considered the volume effects, price effects, and impact of subject imports. With respect to volume effects, the Commission found that the volume of cumulated subject imports increased by 8.2 percent over the period of investigation ("POI") and that the market share of such imports increased by 5.3 percentage points, which the Commission considered significant in both absolute terms and relative to U.S. consumption. *Id.* at 34.

16. With regard to price effects, the Commission made no express finding of price suppression or price depression. Instead, the Commission found that subject imports "significantly undersold the domestic like product leading to lost sales and market share" and concluded that "subject imports had significant price effects." *Id.* at 41. The Commission also found that subject imports had significant price effects, because cumulated subject imports significantly undersold the domestic like product, leading to lost sales and market share. *Id.* The Commission found that the pricing data showed that cumulated subject imports pervasively undersold the domestic like product in both branded and private label products. *Id.* at 35-36. The Commission rejected the econometric analysis provided by respondents (including Plaintiff), who argued that the pricing data were flawed because the data reflected a specific brand mix that contributed to the appearance of underselling. *Id.* at 37-38. Substantial evidence confirms that certain firms may sell dimensionally indistinguishable tires at a wide range of price points. *Id.* However, the Commission stated that the econometric analysis was flawed because it was based on a comparison of brands, irrespective of the country of origin, and thus could not shed light on

whether there has been significant price underselling by the imported merchandise as compared with the price of domestic like products in the United States. *Id.* at 38. The Commission thus found that the econometric analysis did not affect its conclusion. *Id.*

17. The Commission also examined price trends and "considered the relationship between cumulated subject imports, which pervasively undersold the domestic like product, and the domestic industry's declining prices." *Id.* at 41. The Commission recognized that, while the prices of some pricing products declined during the POI, domestic prices for the largest volume pricing product *increased*. *Id.* For the pricing products for which domestic prices declined over the POI, the Commission found that the magnitude of the declines was limited, or the volumes associated with those producers were small. *Id.* When considering whether subject imports prevented price increases that otherwise would have occurred, the Commission concluded that although the domestic industry's ratio cost of goods sold ("COGS") to net sales increased, that "modest increase" occurred while apparent U.S. consumption declined by 10.6 percent. *Id.*

18. Finally, when evaluating the impact of the subject imports, the Commission found that "many of the domestic industry's performance indicators declined from 2018 to 2019 and then declined further in 2020." *Id.* at 42. However, at the same time, the Commission acknowledged several performance indicators that improved from 2018 to 2019 before declining sharply in 2020, including capacity, production related workers, hours worked, and hourly wages. *Id.* at 42-44. However, the Commission never acknowledged or grappled with the continued profitability of the U.S. industry, which had double-digit operating margins that had nearly doubled since the last time the Commission examined the industry in *PVLT Tires from China* in 2015. *See id.* Instead, the Commission focused on the declines in the domestic industry's performance and attributed them to "the significant and increasing volume of

6

cumulated subject imports [that] undersold the domestic like product to a significant degree throughout the period of investigation." *Id.* at 43. The Commission found that "this significant underselling" by subject imports "enabled cumulated subject imports to take sales and market share from the domestic industry," which resulted in the domestic industry having "few shipments than it would have otherwise, yielding lower production, capacity utilization, and employment, and also lower revenues, which reduced the industry's gross profit, operating profit, and net income." *Id.* at 43. The Commission thus concluded that cumulated subject imports from Korea, Taiwan, Thailand, and Vietnam had a significant impact on the domestic industry during the POI.

19.     The Commission concluded that the severe market disruptions caused by the COVID-19 pandemic during 2020, including decreased demand, plant shutdowns by domestic producers, and supply chain disruptions, contributed to the domestic industry's declining performance. The Commission observed that although U.S. consumption declined by 12.5 percent from 2019 to 2020, a number of the domestic industry's performance indicators had declined from 2018 to 2019, and many performance indicators fell in excess of the 12.5 percent decline in apparent U.S. consumption. *Id.* at 44. Accordingly, the Commission found that "the decline in demand in 2020 does not fully explain the domestic industry's declining performance that year." *Id.* The Commission also stated that it was "unpersuaded by respondents' arguments that the domestic industry was disproportionately affected by the COVID-19 pandemic," noting that both domestic producers and importers reported being affected by the pandemic and that most domestic producers characterized the impact as temporary. *Id.* at 46. The Commission found that domestic producers were "able to resume shipping tires at relatively high levels" during the same period in 2020 that subject imports increased. *Id.* Accordingly, the Commission

7

concluded that "subject imports continued to capture market share from the domestic industry" "even as the domestic industry resumed operations and demand remained weak." *Id.*

20. Commission Johanson's dissent concluded that there was no material injury or threat of material injury by reason of subject imports, finding that (1) but for the disruptions caused by the COVID-19 pandemic to both demand and supply, the market share shift observed in 2020 is not likely to have occurred; (2) despite consistent price underselling by subject imports, there were no adverse price effects on the U.S. prices of the domestic like product; and (3) the deterioration in the financial performance of the domestic industry, which remained at a healthy rate of profitability, was driven by declining domestic production that led to higher unit direct labor and unit "other factory costs" even as the gross values of those costs declined. *Id.* at 49.

21. Similar to his fellow Commissioners, Commissioner Johanson examined volume effects, price effects, and impact, reaching the exact opposite conclusion in view of the same evidence. Commissioner Johanson concluded that import volumes were significant in absolute and relative terms, but they do not warrant an affirmative determination considering the conditions of competition—particularly the diversity of products available, the large volume of imports by U.S. producers, and the impact of the COVID pandemic—and the lack of significant price effects. *Id.* at 49-51. With respect to price effects, Commissioner Johanson found that subject imports had not caused any negative price effects for the domestic industry. Although Commissioner Johanson agreed that the pricing data showed significant underselling of the domestic like product by cumulated subject imports, he did not find that the underselling had any adverse price effects or led to a significant gain in market share by subject imports at the expense of the domestic industry. *Id.* at 52. Commissioner Johanson also found that the declines in

branded pricing products were small and remained steady over the POI, with little variation. While Commissioner Johanson observed that private label products declined more significantly, he found that private label tires only accounted for a small fraction of the U.S. industry's revenues, and that data on the record indicated that U.S. producers that lowered the prices of private label tires experienced *increased revenues*, suggesting that price reductions in private label tires cannot be properly characterized as price depression. *Id.* at 52-53. Commissioner Johanson found further that evidence on the record did not indicate price suppression, noting that "it is unlikely that increases in prices would have been observed over the {POI}, especially with raw material costs declining steadily and demand depressed drastically for much of 2020 due to COVID-19 pandemic lockdowns and related restrictions." *Id.* at 53. Commissioner Johanson thus concluded that subject imports did not have significant adverse price effects on the domestic industry. *Id.* at 54.

22. Commissioner Johanson also disagreed with the Commission's impact assessment, in particular its consideration of the impact of the COVID-19 pandemic. Commissioner Johanson explained that the POI

> features—in its final year—an extraordinary shock, significantly affecting both demand and supply in the U.S. market. For much of the second quarter of 2020, the COVID-19 pandemic shut down factories, kept vast numbers of vehicles that use these tires off the highways, closed retail outlets, and disrupted supply chains that U.S. producers rely upon for efficient production.

*Id.* at 54-55. Commissioner Johanson recognized that, in light of the unprecedented impact of the COVID-19 pandemic, "{c}oming to conclusions regarding causality under such tangled circumstances is difficult, a point emphasized by respondents and conceded by petitioner." *Id.* at 55. Commissioner Johanson emphasized that a large majority of the domestic industry's loss and the subject imports' gain in market share came in 2020, and that "the domestic industry's 4.0 percentage point market share loss in 2020 can be traced to reduced availability of U.S.-produced

PVLT tires while subject imports did not experience the supply shock to the same degree." *Id.* at 56. Unlike the majority, Commissioner Johanson pointed to evidence on the record that domestic producers were unable to quickly rebound from their four- to six-week shutdowns, which resulted in depressed production for as much as four to five months. *Id.* At the same time, Commissioner Johanson pointed to evidence on the record that "subject imports were better positioned to fill the increasing demand" for PVLT tires than domestic producers. *Id.* Although Commissioner Johanson acknowledged that record evidence showed that the domestic industry's performance fell precipitously from 2019 to 2020, he found that those indicators either improved, remained stable, or declined modestly from 2018 to 2019. *Id.* at 56-57.

23. Following the Commission's final determination, Commerce published the antidumping duty order on July 19, 2021. *Orders*, 86 Fed. Reg. 38,011.

## STATEMENT OF CLAIMS

24. Paragraphs 1 through 23 are incorporated by reference.

25. In the following respects and for other reasons apparent from the record, the Commission's *Final Views* are not supported by substantial evidence and are otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

## COUNT ONE

26. Paragraphs 1 through 25 are incorporated by reference.

27. In its *Final Views*, the Commission disregarded the continued profitability of the domestic industry, which itself belied the Commission's conclusion that the domestic industry was experiencing any level of material injury. The Commission must determine whether an industry in the United States is materially injured by reason of subject imports, 19 U.S.C. § 1673(2)(A)(ii), which the statute defines as "harm which is not inconsequential, immaterial, or

unimportant," *id.* § 1677(7)(A). As part of its analysis, the Commission must consider subject import volumes and prices, as well as the impact of such imports on the domestic industry. *Id.* § 1677(7)(C). In its impact analysis, the Commission must consider, *inter alia*, profits and domestic industry performance. *Id.* § 1677(7)(C)(iii). Although the Commission "may not determine that there is no material injury or threat of material injury to an industry in the United States merely because that industry is profitable or because the performance of that industry has recently improved," *id.* § 1677(7)(J), this provision does not license the Commission to ignore evidence of profitability and improved performance in determining whether an industry is, on its face, suffering from adverse impacts by reason of subject imports.

28.  The Commission utterly failed to grapple with substantial record evidence showing that subject imports did not adversely impact the domestic PVLT tire industry. For starters, the domestic industry remained a highly profitable industry throughout the POI, with double-digit profit margins throughout the POI that declined only slightly despite the disruptions to the supply chain and U.S. demand caused by the COVID-19 pandemic. According to Commissioner Johanson, the domestic industry's profitability was 21.5 percent in 2018 and 18.7 percent in 2020, with the majority of the decline (a mere 1.7 percentage points) occurring in 2020, which is attributable to factors other than subject imports (i.e., increased unit COGS and selling, general, and administrative expenses caused by the COVID-19 pandemic). *See Final Views*, USITC Pub. 5212 at 57. Moreover, the beginning of the POI marked an active period of investment in which five new domestic producers entered the U.S. market through greenfield investments, indicating that the U.S. domestic industry remained an attractive investment. *Id.*

29.  Moreover, the Commission did not acknowledge that it had examined the domestic PVLT industry only six years prior in *PVLT Tires from China*, in which it found

operating margins that were almost half of the domestic industry's operating margins in this case. *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, Inv. Nos. 701-TA-522 and 721-TA-1258 (Final), USITC Pub. 4545 (Aug. 2015) at C-3 (Table C-1). Despite Plaintiff raising specific arguments on this point, the Commission did not address *PVLT Tires from China*.

30. By finding that a highly profitable industry with new entrants and investments is materially injured, the Commission has effectively rendered inutile the statutory standard of material injury set forth in 19 U.S.C. § 1677(7)(A) and (C). The Commission has allowed 19 U.S.C. § 1677(7)(J), which prevents the Commission from determining that there is no material injury or threat of material injury to an industry in the United States *merely* because it is profitable, to erase its obligation under the statute to make a separate finding that the domestic industry has suffered adverse impacts by reason of subject imports. 19 U.S.C. § 1677(7)(A), (C).

31. Because the Commission did not consider the profitability of the domestic industry and determine whether the domestic industry had experienced actual adverse impacts resulting from subject imports, the Commission's finding that the domestic industry PVLT tire industry is materially injured by reason of subject imports from Korea, Taiwan, Thailand, and Vietnam is not supported by substantial evidence on the record and is not otherwise in accordance with law.

### COUNT TWO

32. Paragraphs 1 through 31 are incorporated by reference.

33. In addition to its failure to consider evidence on the domestic industry's profitability and improved performance, the Commission did not properly consider the effects of the COVID-19 pandemic on the performance of the domestic industry, which likewise severed

the causal link between increased subject imports and any harm experienced by the domestic industry. The statute requires the Commission to examine the impact of subject imports on an affected industry to determine that subject imports were a causal factor in the harm to the domestic industry. 19 U.S.C. § 1677(7)(C)(iii). In doing so, the statute requires the Commission to "evaluate all relevant economic factors within the context of the business cycle and conditions of competition that are distinctive to the affected industry." *Id.*

34. Here, the Commission failed to properly consider the unprecedented supply and demand disruptions caused by the COVID-19 pandemic, which resulted in precipitous declines in the domestic industry's financial performance indicators from 2019 to 2020. Evidence on the record showed that the domestic industry's financial indicators either improved, remained stable, or declined marginally from 2018 to 2019. However, the financial indicators show sharp, dramatic declines from 2019 to 2020, as the domestic industry absorbed the shocks caused by the COVID-19 pandemic. Although the Commission asserted that the domestic industry's financial performance indicators declined more than the decline in demand in 2020, it did not meaningfully consider record evidence that showed the effects of the COVID-19 pandemic on the domestic industry extended far beyond a decrease in demand, and domestic producers were unable to recover until well into 2020.

35. As Commissioner Johanson found in dissent, the POI "features—in its final year—an extraordinary shock, significantly affecting both demand and supply in the U.S. market." *Final Views*, USITC Pub. 5212 at 54. The record evidence indicated that the effects of the COVID-19 pandemic on the domestic industry reverberated beyond a demand in decline and temporary plant shutdowns, as found by the Commission majority. Instead, record evidence showed that the COVID-19 pandemic caused plant shutdowns, labor shortages, and supply chain

disruptions that had lasting effects on U.S. producers' ability to supply their customers, even as demand began to recover in the third quarter of 2020. The Commission did not compare the significance of the effects of the COVID-19 pandemic with any alleged effects of subject imports. Had it done so, record evidence would indicate that any effects of subject imports did not adversely impact the domestic industry, such that subject imports were inconsequential, immaterial, and unimportant when compared with the far-reaching disruption to the industry caused by the COVID-19 pandemic.

36. Therefore, because the Commission's impact analysis failed to meaningfully consider the impact of COVID-19 on the domestic industry, the Commission's finding that the domestic industry PVLT tire industry is materially injured by reason of subject imports from Korea, Taiwan, Thailand, and Vietnam is not supported by substantial evidence on the record and is not otherwise in accordance with law.

## COUNT THREE

37. Paragraphs 1 through 36 are incorporated by reference.

38. The Commission improperly found that subject imports had caused negative price effects to the domestic industry. 19 U.S.C. § 1677(7)(C)(ii) requires the Commission to consider whether

> (I) there has been significant price underselling by the imported merchandise as compared with the price of domestic like products in the United States, and (II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.

In other words, under the statute, the Commission must not only find underselling, but it must also find that underselling caused either price depression or price suppression for the domestic industry. 19 U.S.C. § 1677(7)(C)(ii). Here, the Commission only made a finding of underselling, without making express findings of either price depression or price suppression.

The record shows that, while subject imports did undersell the domestic like product, the data did not show price depression or price suppression. Moreover, the Commission did not properly consider evidence on the record that showed the pricing product data indicated predominant underselling because of the existence of branded products that distorted the data.

39.   Therefore, the Commission's pricing analysis was unsupported by substantial evidence and otherwise not in accordance with law.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court (1) hold that the Commission's determination in the subject investigation is unsupported by substantial evidence and otherwise not in accordance with law; (2) remand the investigation to the Commission for disposition consistent with any orders and opinions of this Court; and (3) provide such other relief as this Court deems proper.

Respectfully submitted,

Bernd G. Janzen
Margaret C. Marsh
Devin S. Sikes
Daniel M. Witkowski
Julia K. Eppard
Sydney L. Stringer
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006

Dated: September 16, 2021          *Counsel to Sumitomo Rubber (Thailand) Co., Ltd.*

**CERTIFICATE OF SERVICE**

Pursuant to Court Rule 3(f), I hereby certify that copies of the foregoing Complaint were served on the following parties by certified mail, return receipt requested:

| | |
|---|---|
| **On behalf of Defendant:**<br>Courtney Sheehan McNamara<br>Office of the General Counsel<br>U.S. International Trade Commission<br>500 E Street, SW<br>Washington, D.C. 20436§<br>(202) 205-3095<br>courtney.mcnamara@usitc.gov | **On behalf of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC**:<br>Roger Schagrin, Esq.<br>Schagrin Associates<br>900 Seventh Street NW<br>Washington, D.C. 20001<br>202-223-1700<br>rschagrin@schagrinassociates.com |
| **On behalf of ITG Voma Corporation**:<br>Jonathan T. Stoel<br>Hogan Lovells US LLP<br>555 Thirteenth Street, NW<br>Washington, DC 20004<br>202-637-6634<br>jonathan.stoel@hoganlovells.com | **On behalf of Atturo Tire Corp**.:<br>Camelia Mazard, Esq.<br>Doyle, Barlow & Mazard PLLC<br>1776 K Street, NW, Suite 200<br>Washington, D.C. 20006<br>202-589-1837<br>apoattorney@dbmlawgroup.com |
| **On behalf of Bridgestone Americas Tire Operations:**<br>Daniel J. Cannistra, Esq.<br>Crowell & Moring LLP<br>1001 Pennsylvania Ave., N.W.<br>Washington, D.C. 20004<br>202-624-2500<br>dcannistra@crowell.com | **On behalf of Deestone Corporation Ltd.:**<br>Jay C. Campbell, Esq.<br>White & Case<br>701 Thirteenth Street, NW<br>Washington, DC 20005<br>202-626-3600<br>jcampbell@whitecase.com |
| **On behalf of Brand Inc**.:<br>Mark R. Ludwikowski, Esq.<br>Clark Hill PLC<br>1001 Pennsylvania Ave, NW<br>Suite 1300 South<br>Washington, DC 20004<br>202-640-6680<br>mludwikowski@clarkhill.com | **On behalf of Cooper Tire & Rubber Company:**<br>Gregory C. Dorris<br>Pepper Hamilton LLP<br>2000 K Street, N.W.<br>Suite 600<br>Washington, DC 20006<br>202-220-1224<br>dorrisg@pepperlaw.com |

| | |
|---|---|
| **On behalf of Cheng Shin Rubber USA Inc., dba Maxxis International – USA, Cheng Shin Rubber Ind. Co. Ltd., and Maxxis International (Thailand) Co., Ltd.:**<br>Kristen Smith, Esq.<br>Sandler Travis & Rosenberg, P.A.<br>1300 Pennsylvania Ave. N.W.<br>Suite 400<br>Washington, D.C. 20004<br>202-730-4965<br>ksmith@strtrade.com | **On behalf of TBC Corporation and Unicorn Tire Corp.:**<br>Matthew R. Nicely, Esq.<br>Akin Gump Strauss Hauer & Feld, LLP<br>2001 K Street, NW<br>Washington, DC 20006<br>(202) 887-4046<br>mnicely@akingump.com |
| **On behalf of Nexen Tire Corporation**:<br>David E. Bond, Esq.<br>White & Case<br>701 Thirteenth Street, NW<br>Washington, DC 20005<br>(202) 626-3600<br>dbond@whitecase.com | **On behalf of American-Omni Trading Company:**<br>John M. Peterson, Esq.<br>Neville Peterson LLP<br>One Exchange Plaza<br>55 Broadway, Suite 2602<br>New York, NY 10006<br>(212) 635-2730<br>jpeterson@npwny.com |
| **On behalf of Vee Tyre and Rubber Co., Ltd.:**<br>**Richard L.A. Weiner, Esq.**<br>Sidley Austin LLP<br>1501 K Street, N.W.<br>Washington, DC 20005<br>202-736-8000rweiner@sidley.com | **On behalf of American Tire Distributors and its wholly owned subsidiary The Hercules Tire & Rubber Company:**<br>Leah N. Scarpelli, Esq.<br>Arent Fox LLP<br>1717 K Street, NW<br>Washington, DC 20006<br>202-715-8403<br>leah.scarpelli@arentfox.com |

| | |
|---|---|
| **On behalf of Sentury Tire Co. Ltd., Sentury Tire USA Inc., S.R. Tyres Co., Ltd., Vogue Tyre & Rubber Co., General Rubber Co., Ltd, Zhongce Rubber Co., Ltd, Prinx Chengshan Tire Co., Ltd, Llit Co., Ltd. and \*Linglong International Tyre (Thailand) Co., Ltd.:**<br>Jordan C. Kahn, Esq.<br>Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP<br>1201 New York Ave., NW<br>Suite 650<br>Washington, DC 20005<br>202-783-6881<br>jkahn@gdlsk.com | **On behalf of the Taiwan Rubber & Elastomer Industries Association:**<br>Peter J. Koenig, Esq.<br>Squire Patton Boggs (US) LLP<br>2550 M Street, NW<br>Washington, D.C. 20037<br>202 626 6223<br>peter.koenig@squirepb.com |
| **On behalf of Les Schwab Warehouse Center, Inc.:**<br>Michael P. House, Esq.<br>Perkins Coie LLP<br>700 Thirteenth Street, NW<br>Washington, D.C. 20005<br>202-654-6488<br>mhouse@perkinscoie.com | **On behalf of Otani Radial Co., Ltd., Kenda Rubber Ind. Co., Ltd, Kenda Rubber (Vietnam) Co., Ltd., American Kenda Rubber Industrial Co., Ltd., and Americana Tire & Wheel, division of Americana Development, Inc.:**<br>Thomas J. Trendl, Esq.<br>Steptoe & Johnson LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036-1795<br>202-429-8055<br>ttrendl@steptoe.com |
| **On behalf of Hankook Tire & Technology Co., Ltd., Hankook Tire America Corp., and Hankook Tire Manufacturing Tennessee, LP:**<br>Patrick J. McLain, Esq.<br>WilmerHale LLP<br>1875 Pennsylvania Ave. NW<br>Washington, DC 20006<br>202-663-6393Patrick.mclain@wilmerhale.com | **On behalf of Nankang Rubber Tire Corp., Ltd.:**<br>Nancy A. Noonan, Esq.<br>Arent Fox LLP<br>1717 K Street, NW<br>Washington, DC 20006<br>202-857-6479<br>nancy.noonan@arentfox.com |

Dated:  September 16, 2021                                       /s/ Bernd G. Janzen
                                                                                    Bernd G. Janzen